UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Brian Gunderson,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Sheryl Ramstad Hvass,
individually and as
Commissioner for the
Minnesota Department
of Corrections,

Defendant. Civ. No. 01-646 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 10th day of June, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the parties' cross-motions for Summary Judgment. A Hearing on the Motions was held on March 7, 2002, at which time the Plaintiff appeared personally, and by Bradford W. Colbert, Esq., and the Defendant appeared by Kari Jo Ferguson, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Defendant's Motion be granted, and that the Plaintiff's Motion be denied.

FILED JUN 10 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK J.A.

(25)

## II. Factual and Procedural History

On or about April 2, 1998, the Plaintiff was charged with First Degree Criminal Sexual Conduct pursuant to Minnesota Statutes Section 609.342, Subdivision (1)(e)(i). Those charges arose out of an incident on March 31, 1998, in which a woman, who is only identified as "R.L.W.," alleged that she had been raped, and assaulted, by the Plaintiff. Through his attorney, the Plaintiff negotiated a Plea Agreement, under which he would plead guilty to Third Degree Assault. As a result, the State substituted the original Complaint with a Complaint which charged the Plaintiff with Third Degree Assault, in violation of Minnesota Statutes Section 609.233, Subdivision (1). On July 22, 1998, the Plaintiff entered a plea of guilty to that charge, and admitted, during the Plea Hearing, that he had physically assaulted R.L.W. On August 17, 1998, the Plaintiff was sentenced to fifteen months in jail -- the execution of which was stayed -- and he was placed on three years probation. On June 21, 1999, the Plaintiff's probation was revoked, and he was committed to the custody of the Commissioner of Corrections ("COC"). While in the COC's custody, the Plaintiff was informed that he would have to register as a predatory offender, pursuant to Minnesota Statutes Section 243.166, and would be obligated to provide a DNA sample in accordance with Minnesota Statutes Section 609.3461, Subdivision 2.

Although the Plaintiff complied with these requirements, in May of 2001, he brought this Section 1983 action, alleging that the Defendant violated his rights under the Constitution of the United States, and damaged his reputation, by requiring him to register as a predatory offender. In his Complaint, the Plaintiff sought: 1) a declaration that, by requiring him to register as a predatory offender, the Defendants were violating his constitutional rights; 2) injunctive relief in the form of having his name removed from the sex offender rolls; and 3) monetary relief in the form of damages for the claimed injury to his reputation.[1]

---

[1]The Plaintiff concedes that the only aspect of his claim that can proceed is that which seeks injunctive and declaratory relief against the Defendant, in her official capacity. The Plaintiff's claim for damages from the Defendant in her official capacity must be dismissed because the Eleventh Amendment immunizes from suit, "a state official * * * if immunity will 'protect the state treasury from liability that would have the same practical consequences as a judgment against the State itself." Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n. 34 (1984). As a result, the Eleventh Amendment bars actions in Federal Court which seek monetary damages from individual State officers in their official capacities because such lawsuits are essentially "for the recovery of money from the state." Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 464 (1945); see also, Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)("[N]either a State nor its officials acting in their official capacities are 'persons under [Section] 1983'" when sued for damages.). Consequently, we recommend that the Plaintiffs' claims for money damages, against the Defendant, in her official capacity, be dismissed.

As to the Plaintiff's claims against the Defendant in her in-
(continued...)

The Plaintiff seeks a Summary Judgment which finds, as a matter of law, that the Defendant has improperly forced him to register as a sexual offender, while the Defendant requests the entry of Summary Judgment, which adjudicates that the Plaintiff's Complaint is barred by the Eleventh Amendment, that the Defendant is entitled

---

(...continued)
dividual capacity, it is axiomatic that, to sustain a claim under Section 1983, a plaintiff must demonstrate that the named defendant was directly and personally involved in the illegal actions, or in the policy decision, which created the unlawful context for those actions. See e.g., Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir., 2001); McNair v. Norris, 210 F.3d 379, 2000 WL 490709 at *1 (8th Cir., April 27, 2000)[Table Decision]; Martin v. Sergeant, 708 F.2d 1334, 1337 (8th Cir. 1985). Accordingly, the doctrine of respondeat superior is not available to a Section 1983 plaintiff. See, e.g., Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978); Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001); Martin v. Sergeant, supra. Likewise, an official's general supervisory responsibilities are insufficient to establish the personal involvement requirement. See, Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), citing Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Absent a showing of direct and personal involvement, the only other basis upon which a Section 1983 plaintiff may state a claim against a defendant, is by demonstrating that the particular defendant failed to properly train, supervise or control, the actions of a subordinate who invaded the plaintiff's rights. See, Tlamka v. Serrell, supra at 635; Wilson v. Spain, 209 F.3d 713, 717 (8th Cir. 2000); Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999). Here, the Plaintiff makes no allegation that the Defendant was personally involved in the actions that he alleges to have violated his constitutional rights, nor does he allege that the Defendant is liable due to her failure to properly supervise, train, or control, the actions of her subordinates. As the Plaintiff has conceded that he has failed to state a claim against the Defendant in her individual capacity, we recommend that those claims also be dismissed.

to qualified immunity from suit, and that the Plaintiff has failed to state a claim upon which relief can be granted.[2]

## III. Discussion

Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed

---

[2]While the Plaintiff had initially complained about being required to provide a DNA sample, at the time of the Hearing, the Plaintiff's counsel represented that this was no longer an issue. Cf., Kruger v. Erickson, 875 F. Supp. 583 (D. Minn. 1995)(concluding that taking of DNA samples, pursuant to Minnesota Statutes Section 609.3461, does not violate the subject's right to be free against unreasonable searches and seizes, cruel and unusual punishment, self-incrimination, due process, or the protections against ex post facto laws), aff'd on other grounds, 77 F.3d 1071 (8th Cir. 1997). As a result, we only address the Plaintiff's challenge to being made to register as a sex offender under Minnesota Statutes Section 243.166.

fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992,996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

A. Standard of Review. The crux of the issue before us is whether the Plaintiff was properly required to register under Minnesota's "Registration of Predatory Offenders" Statute ("Statute"), which provides, in pertinent part, as follows:

> (a) A person shall register under this section if: (1) the person was charged with * * * a felony violation of [criminal sexual conduct under Section 609.342][3] and convicted of * * * that offense or another offense arising out of the same set of circumstances.

Minnesota Statutes Section 243.166, Subdivision 1 (a)(1).

---

[3]This is the Section under which the Plaintiff was originally charged. Under the Statute, there are additional offenses which also require registration. See, Minnesota Statutes Section 243.166, Subdivision1(a)(1)(i)-(iv).

A person who is required to register under this Section is to be provided notice of this requirement, either by the Sentencing Court, or by an assigned Corrections Agent. Minnesota Statutes Section 243.166, Subdivision 2. The person must initially register with his or her Corrections Agent as soon as that assignment is made and, after that, he or she must provide notification, in writing, at least five days prior to any change in the person's primary address. Id. at Subdivision 3. In the event that the registrant intends to move to another State, the Statute requires compliance with any applicable registration requirements of that State. Id. The registration consists of a fingerprint card, a photograph of the registrant, and a written statement, signed by the registrant, which includes a list of primary and secondary addresses, the address of any property within the State of Minnesota that is owned, leased, or rented by the registrant, a list of all employment locations, a list of all school residences, and the "year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by the" registrant. Id. at Subdivision 4-4a.

Under the Statute, the Plaintiff is required to register for the longer of ten years, or the end of his probation, supervised release, or conditional release, and failure to so register adds an additional five years to that period. Id. at Subdivision 6. The Statute makes the registration data "private" information, which

may only be used for law enforcement purposes, except in the event that a registrant is out of compliance with the address registration requirements for at least thirty days, at which time, the Statute provides that the information may be made available to the public. Id. at Subdivision 7a. A knowing violation of the Statute constitutes a felony, which could result in imprisonment for up to a period of five years, a fine of $10,000, or both. Id. at Subdivision 5.

B. Legal Analysis. The Plaintiff advances three arguments in support of his Motion for Summary Judgment. First, he contends that, on its face, the Statute does not apply to him because, even though he was originally charged with a predatory offense requiring registration, that charge was dismissed, and was substituted with a non-predatory charge. Second, the Plaintiff contends that requiring him to register is a violation of his Substantive Due Process rights, in that it violates his right to be presumed innocent. Lastly, the Plaintiff argues that requiring him to register was a violation of his Procedural Due Process rights, because he never had an opportunity to dispute the charges on which the registration requirement is based. We address each of these arguments in turn.

1. The Applicability of the Statute. The Plaintiff contends that, having had his originally charged predatory offense supplanted by a non-predatory offense, the Statute has no applica-

tion to him. According to the Plaintiff, the fact that the original charges were dismissed, and a separate Complaint was substituted, presents a substantially different scenario from the case in which a person is charged with several offenses, some enumerated in the Statute and some not, and then pleads guilty to one of the non-enumerated offenses, or pleads guilty to a lesser included offense of an enumerated crime. The Defendant counters, however, that the substituted charges were brought in the same criminal case, as part of the plea bargain, and arose from the same set of circumstances as the originally charged predatory offense and, as such, the Statute was properly applied to the Plaintiff.

Our inquiry into the applicability of the Statute does not commence on a clean slate, as the Minnesota Supreme Court addressed the applicability of the Statute to an individual, who was charged with both enumerated and non-enumerated offenses, and who pled guilty only to a non-enumerated offense, in Boutin v. LaFleur, 591 N.W.2d 711 (Minn. 1999), cert. denied sub nom., Boutin v. Hvass, 528 U.S. 973 (1999). Of course, "as a federal court interpreting a state statute, we are '"bound by the construction given the statute by the highest court within the state"' that promulgated the measure." The Medical Protection Co. v. Bell, 912 F.2d 244, 245 (8th Cir. 1990), cert. denied, 498 U.S. 1090 (1991), quoting Chandler v. Presiding Judge, Calloway County, 838 F.2d 977,

979 (8th Cir. 1988), quoting in turn, Slaaten v. Cliff's Drilling Co., 748 F.2d 1275, 1276 (8th Cir. 1984); see also, Senn v. Tile Layers Protective Union, 301 U.S. 468 (1937); Yoder v. Nu-Enamel Corp., 117 F.2d 488, 489 (8th Cir. 1941).

In Boutin, the Minnesota Supreme Court reviewed the history of the Statute, and determined that, at the time that it was initially enacted in 1991, the Statute "only required that persons convicted of certain enumerated felony offenses register upon release from prison," but that, in 1993, the State "legislature amended the statute to require that a person register if convicted of an enumerated felony or 'another offense arising out of the same set of circumstances.'" Boutin v. LaFleur, supra at 715, quoting Act of May 20, 1993, ch. 326, Art. 10, §1, 1993 Minn. Laws 2090. The Court concluded that, in order to give meaning to the language added in the amendment, the Statute had to be read as requiring registration by persons who had been charged with an enumerated offense, but who were convicted of a non-predatory offense, which arose out of the same set of circumstances as the charged predatory offense. Id.

The Plaintiff argues for a different result, and urges that we are here presented with a different factual situation than was presented in Boutin, because the charges against the Plaintiff here were dismissed, and substitute charges were filed, whereas, in Boutin, the plaintiff merely pled to one of the many charges with

which he had been charged. However, we can see no distinction, which makes a substantive difference, between the circumstances in Boutin, and those presented here. Here, the charge to which the Plaintiff pled guilty was substituted for the originally charged offense in the same criminal proceeding, and we can fathom no practical difference between this case and one in which an individual was originally charged with both an enumerated and a non-enumerated offenses, and ultimately pleads guilty to the non-enumerated offense on the condition that the enumerated offense would be dismissed.

At the Plaintiff's Plea Hearing, the Sentencing Court expressly stated that the charge against the Plaintiff was "crim[inal] sex one," and the State advised that the Plaintiff had agreed to enter a plea on a substituted charge "**in exchange** for which the state w[ould] dismiss the [enumerated] charge in the complaint." Exhibit D to Affidavit of Gordon Coldagelli, at 2-4 [emphasis added]. So long as the substituted charge arose out of the same set of circumstances as did the originally charged offense, we have no reasoned basis to treat the Plaintiff's circumstance differently than the result that was reached in Boutin. Accordingly, our analysis turns to whether the Plaintiff's conviction arose out of the same set of circumstances as did his original charge.

In addressing this issue, the Plaintiff argues "that it is impossible to make this determination without first determining whether the charged offense actually occurred." Plaintiff's March 19, 2002 Letter Brief to the Court ("Plaintiff's Letter Brief"), at 1. According to the Plaintiff's reasoning, if the allegations which underlie his original charges "never actually happened," then the charged offense, and the offense to which he pled guilty, "could not possibly arise from the same set of circumstances." Id. This argument, however, was addressed, and rejected, by the Minnesota Court of Appeals in Minnesota v. Kemmer, 2001 WL 345470 *2 (Minn.App., April 10, 2001). There, Kemmer had argued that he should not have been required to register because there was "no basis in the record for the district court's determination that the act with which [he] was charged and the act to which he pleaded guilty arose out of the same set of circumstances 'because the court never established what those circumstances were.'" Id. The Court disagreed, and held that a "district court is not required to find explicitly that the act with which a defendant is charged and the act to which he pleads guilty arise from the same underlying facts 'if those facts are sufficiently established in the record,'" and the factual basis established at the Plea Hearing could sufficiently establish that the two acts arose from the same set of circumstances. Id. The Court then found that, when it was clear

that the charged offense, and the offense to which the accused pled guilty, "involved the same victim and occurred on the same date at the same place," then the two offenses arose from the same set of circumstances.[4] We recognize that Kemmer, as an unpublished decision of the Minnesota Court of Appeals, is "not precedential," Minnesota Statutes Section 480A.08, Subdivision 3, but the reasoning of that decision tracks well with the holding, and analysis of Boutin, which we find persuasive, and adopt as our own.

---

[4]In a post-Hearing letter brief, the Plaintiff has cited several decisions, from the Minnesota Court of Appeals, which he proffers for the proposition that a determination of the commonality of the factual predicates for the charged predatory offense, and the offense on which a guilty plea was entered, was eluded in order to avoid holding the Statute unconstitutional. We note, however, that the Court, in Murphy v. Wood, 545 N.W.2d 52 (Minn.App. 1996), was unable to determine, from the Record, whether a commonality existed, but noted that the charge to which the plea was entered, was not a sexual assault, and had a different victim than the sexual assault offense that was ultimately dismissed. Here, the victim of both offenses was the same individual, and the charges arose out of the same factual circumstances. As for In the Matter of the Welfare of J.L.M. and D.R.O., 1996 WL 380664 (Minn.App. 1996), it should be sufficient to observe that the Court's ruling is directly at odds with the subsequent ruling of the Minnesota Supreme Court in Boutin v. LaFleur, 591 N.W.2d 711 (Minn. 1999), cert. denied sub nom., Boutin v. Hvass, 528 U.S. 973 (1999). Lastly, as to the cited case of In the Matter of the Risk Level Determination of C.M., 578 N.W.2d 391 (Minn.App. 1998), a different statutory measure was at issue -- namely, the Sex Offender Community Notification Act, which is codified at Minnesota Statutes Section 244.052 -- that, as its name implies, has community notification disclosures substantially in excess of those of the Statute we address here.

Here, R.L.W. claimed that, on March 31, 1998, the Plaintiff had furnished her a ride home from a bar, had come into her residence, and had assaulted, and raped her. At the Plea Hearing, the Plaintiff admitted that, on March 31, 1998, he had assaulted R.L.W. in her home, after being in a bar with her. We think it plain, under the clear language of the Statute, and as applied by the Minnesota Court of Appeals in Kemmer, and the Minnesota Supreme Court in Boutin, that the Record presented here establishes that the offense, of which the Plaintiff was convicted, arose from the same set of circumstances as gave rise to the originally charged predatory offense. The allegations leading to the original charge, as well as to the charge to which he pled guilty, both asserted that, on March 31, 1998, the Plaintiff assaulted R.L.W. in her home after being in a bar with her. It is only the magnitude of that physical assault which differs between the charges. Quite simply, the charges must arise out of the same set of circumstances, and there is no requirement that the accused, such as the Plaintiff, must be proven to have committed the originally charged offense. See, Boutin v. LaFleur, supra at 716 n. 4.

Given the Record before us, including the circumstances which were admitted by the Plaintiff at his Plea Hearing, we conclude that no reasonable Jury could find that the charged offense, and the substituted offense to which the Plaintiff pled guilty, did not

arise out of the same set of circumstances. Accordingly, we find that the Statute was properly applied to the Plaintiff, and we proceed to his second argument.[5]

2. Substantive Due Process. The Petitioner maintains that the requirement, that he register under Minnesota's predatory offender Statute, violates his Constitutional right to substantive due process by impermissibly infringing upon his presumption of innocence, since the Statute presumes that he was guilty of a predatory offense, even though he was not convicted of any such crime.

The Due Process Clauses of the United States Constitution prohibit the Government from depriving a person "of life, liberty, or property without due process of law." United States Constitution, Amendments Five and Fourteen. The substantive aspect of the Due Process Clauses is meant to protect individuals from "certain arbitrary, wrongful government actions, regardless of the fairness of

---

[5]In his Affidavit, the Plaintiff avers that, at the time of his plea, he was not aware of the registration requirements which have now been imposed upon him, and that he had no intention of accepting any plea bargain that would subject him to such registration obligations. Since the time of that attestation, the Minnesota Supreme Court has ruled, in Kaiser v. State, 641 N.W.2d 900 (Minn. 2002), that the statutory duty to register as a predatory offender is a collateral consequence of a guilty plea, that a defendant need not be warned of a collateral consequence before entering a guilty plea, and that the failure to provide such a warning does not allow a subsequent withdrawal of that plea.

the procedures used to implement them." Zinermon v. Burch, 494 U.S. 113, 125 (1990). Allegations that a person's substantive due process rights have been violated are analyzed under two different levels of scrutiny. Unless the right implicated is a fundamental one, that is, a right "deeply rooted in this Nation's history and tradition," Moore v. East Cleveland, 431 U.S. 494, 503 (1977), and "implicitly in the concept of ordered justice such that neither liberty nor justice would exist if [it] were sacrificed," Palko v. Connecticut, 302 U.S. 319, 325 (1937), judicial scrutiny of legislation, under the Due Process Clause, is minimal, and legislation will be upheld unless it is arbitrary or capricious. See, Usery v. Turner Elkhorm Mining Co., 428 U.S. 1, 15 (1976). Legislation will only fail under this level of scrutiny if it "rests on grounds irrelevant to the achievement of a plausible government objective." Heller v. Doe, 509 U.S. 312, 319 (1993). However, in the event that the right implicated is a fundamental right, Courts apply strict scrutiny, under which only legislation which is narrowly tailored to serve a compelling governmental interest will survive review. See, Collins v. Harker Heights, 503 U.S. 115, 125 (1992).

Here, the Plaintiff argues that the Statute violates his fundamental right to be presumed innocent. He acknowledges that, in Boutin v. LaFleur, supra at 717, the Minnesota Supreme Court con-

cluded that, although the presumption of innocence has been recognized as a fundamental right, it "only applies to statutes which are punitive, or criminal in nature," and that, since Minnesota's predatory offender registry statute is regulatory, no fundamental right is implicated by its registration requirements. The Plaintiff urges us to reject the Minnesota Supreme Court's analysis, arguing that the Court reached the wrong result. According to the Plaintiff, in requiring him to register as a predatory offender, the State is presuming that he was found guilty of the charged predatory offense, in order to require him to register based on that presumed guilt. Not surprisingly, the Plaintiff contends that the presumption of guilt is "not consistent with the presumption of innocence," and he warns of a slippery slope, which might lead the State to require registration on no more than the mere suspicion that a predatory crime has been committed, even in the absence of filed charges.

While the extent to which a registration statute might go, if unbridled, does give us pause, we deal here with realities, and not with notions of what might ultimately be. Necessarily, our focus is drawn to the current impact of the Statute, which requires that individuals, who have been charged with an enumerated predatory offense, and who have been convicted of that offense, or of another offense arising from the same circumstances, must register as an

offender. In order to be required to register under the Statute, as it currently reads, an individual must not only have been charged with an enumerated offense, but he or she must also have been convicted of that offense, or of an offense arising from the same circumstances. Thus, the Statute does not require registration merely on a presumption of guilt based solely on a charge but, rather, the Statute requires a specific conviction before mandatory registration follows. The Minnesota Supreme Court has held that the Statute is a regulatory measure, and the Plaintiff has not seriously disputed the accuracy of that judicial finding. In drawing its construction of the Statute as regulatory and not punitive, the Minnesota Supreme Court closely adhered to, and applied, the analytical framework that was formulated by the Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), and the Plaintiff has identified no errors in that analysis.

Prevailing law holds that the fundamental right to be presumed innocent does not attach to regulatory laws. See, Boutin v. LaFleur, supra at 717, citing Lambert v. California, 355 U.S. 225, 229 (1957). The Plaintiff has cited no legal precedent for his argument that, in his instance, the generally prevailing rule should be ignored, nor have we found any such countering authority. Accordingly, we conclude that no fundamental right is implicated by

the application of the predatory offender Statute to the Plaintiff, and we turn to a consideration of whether the Statute has a rational basis; that is, whether it provides a "reasonable means to a permissive object." Usery v. Turner Elkhorn Mining Co., supra at 15.

We find, and the Plaintiff appears to generally concede, that the Statute survives a rational basis review. On rational review, the State is "not required to convince the courts of the correctness of their legislative judgments" but, instead, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker." Minnesota v. Clover Leaf Creamery, 449 U.S. 456, 464 (1981); Heller v. Doe, 509 U.S. 312, 326 (1993); Independent Charities of America v. State of Minnesota, 82 F.3d 791, 798 (8th Cir. 1996), cert. denied, 519 U.S. 993 (1996). The Plaintiff has not convinced us to the contrary.

Requiring the registration of offenders is reasonably related to the legitimate governmental objectives of crime solving, deterrence, and prevention. See, Boutin v. LaFleur, supra at 717-18. While the Plaintiff argues that the State has no interest in registering non-predatory offenders, since such a registration will dilute the usefulness of a predator-offender listing, we cannot

agree. Given the realities of the plea bargaining system, by extending the registration requirements to persons who are charged with a predatory offense, but who plead guilty to a non-predatory charge that arises from the same circumstances, the Minnesota Legislature was attempting to insure the inclusion in the registration rolls, of all predatory offenders, including those who take advantage of favorable plea agreements. The fact that such a registration policy may, in fact, require the inclusion of persons who are not predators, is not a fatal Constitutional defect, since the legislative purpose need only be reasonably related to the State's interest, and here that legislative purpose is. Id. at 718 (rejecting the "dilution" argument, since "[k]eeping a list of such offenders is reasonably related to the legitimate state interest of solving crimes."). In any event, other than his "say so" -- that the Statute serves no proper public purpose -- the Plaintiff advances no evidentiary showing to support his personal view.

Therefore, because we find that Minnesota's predatory offender registration statute is regulatory and, as such, does not implicate the fundamental right to be presumed innocent, and because we further find that the purposes of the Statute are reasonably related to the State's legitimate interest in protecting public safety, and crime-solving, we conclude that the requirement that the Plaintiff

register, under the Statute, does not violate his substantive Due Process rights.

3. Procedural Due Process. As a third challenge to the Statute, the Plaintiff argues that the requirement, that he register as a predatory offender, violates his procedural due process rights, because he is forced to register without being afforded the opportunity to address, or rebut, the predatory charges against him. Once again, we disagree.

Both parties acknowledge that, in determining whether a law violates procedural due process, the first step in the reviewing Court's analysis is to determine whether there is a protectible liberty or property interest at stake. See, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If such an interest can be identified, then the Court proceeds to a consideration of what "process" is "due." Here, the Plaintiff contends that his liberty interest in his good reputation is at stake. He recognizes, however, the Supreme Court's holding, in Paul v. Davis, 424 U.S. 693, 701 (1976), that reputation, on its own, is not "sufficient to invoke the procedural protections of the Due Process Clause," and that, to establish a protectible interest in his reputation, the injury to that reputation must be coupled with the loss of "some more tangible interests" involving the alteration of a legal right, or status, which is conferred or protected by the

State. Id. at 711. This standard is commonly referred to as the "stigma plus" test. See, Siegert v. Gilley, 500 U.S. 226, 234 (1991).

Here, the Plaintiff claims that he has shown "stigma plus," by demonstrating that, in being required to register as a predatory offender, he has been stigmatized, and that the actual requirements of the Statute provide the "plus." Once again, however, we do not start our analysis on a totally clean slate. In Boutin v. LaFleur, the Minnesota Supreme Court considered the issue of whether the Statute violated the procedural due process rights of an individual who had to register, following his conviction for an offense which arose from the same circumstances as had the charged predatory offense, and not because of his conviction on an enumerated, predatory offense. The plaintiff, there, raised the same argument as the Plaintiff does here -- that his loss of reputation, coupled with the burden of complying with the Statute -- satisfied the stigma plus test. Boutin v. LaFleur, supra at 718.

The Minnesota Supreme Court found that being labeled a predatory offender was, indeed, injurious to a person's reputation. It continued by noting, however, that, "[w]hile it [was] true that the information regarding [the plaintiff's] case [was] available to the general public in the form of court documents, there [was] a distinct difference between the mere presence of such information in

court documents and the active dissemination of such information to the state's law enforcement community." Id. The Court then noted that, even if a stigma was presented, the plaintiff would have to show some other loss of a recognizable interest. Id. There, as here, the plaintiff argued that the requirements of registering was such a loss, but the Minnesota Supreme Court rejected that argument, and held that "there is no recognizable interest in being free from having to update address information," and that "[s]uch a requirement is a minimal burden and is clearly not the sufficiently important interest the 'stigma-plus' test requires." Id. at 719.

The Plaintiff complains that the Minnesota Supreme Court erred in its analysis, and he draws our attention to the United States Court of Appeals for the Second Circuit's decision, in Doe v. Department of Public Safety, 271 F.3d 38 (2nd Cir. 2001), cert. granted, --- U.S. ---, 70 U.S.L.W. 3702 (U.S., May 21, 2002), where the Court considered the constitutionality of Connecticut's registration statute. Connecticut's predatory offender law required the registration of persons who had been convicted of criminal offenses against victims who were minors, of nonviolent sexual offenses, of sexually violent offenses, and of felonies committed for a sexual purpose. Id. at 42. Offenders were required to register for either ten years, or for the duration of their life, depending upon

the crime with which they were convicted, and they were compelled to provide a list of identifying factors, including fingerprints, a photograph, and a blood sample, as well as their criminal history, a list of their residences, and documentation concerning certain mental health treatments. Id. Registrants were also required to notify the State Agency with each residence change, and to present themselves for photographing at the State's request. Id.

Unlike Minnesota's Statute, however, Connecticut's predatory offender statute also provided that the Connecticut Department of Public Safety ("CDPS") was to share all registration information with State and local police agencies, together with the Federal Bureau of Investigation, **and** the information would be made available to the public at the CDPS, or via the Internet. Id. at 44. The CDPS website allowed users to search the registry by Zip Code or by town name and, once a list was generated by the search, the user could link from each name on that list to a second page, labeled "'Registered Sex Offender,' which contained the registrant's name, address, photograph, and physical description." Id.

Connecticut's predatory offender law excluded certain groups from the registration requirements, either by not compelling registration at all, or by restricting dissemination of their information to only law enforcement agencies. In order to be excluded, the person had to have been convicted of certain categories of

crimes, and a Court had to make an express finding that registration, or publication -- depending on the category -- was not required for public safety. The plaintiff, in Doe v. Department of Public Safety, complained that, because of the exempted classes, any person who remained on the publicly disseminated registry would impliedly be thought to be a dangerous person, and that, because he claimed that he was not dangerous, his Constitutional right to due process had been violated when he was required to register "without notice and an opportunity to be heard on the question of whether [he was] dangerous." Id. at 45.

In considering the plaintiff's claim, in Doe, under the "stigma plus" analytical framework, the Court started by acknowledging that the mere placement on the registry could be stigmatizing. However, the Court found that, as to the plaintiff, the assertions made by the registry -- that the persons therein had been convicted of crimes characterized by the State as sexual offenses -- were true, and that, since "[t]he gravamen of 'stigma' as part of due process violation is the making under color of law of a reputation-tarnishing statement," the plaintiff would have to allege that a false statement had been made about him in order to entitle him to a Hearing which would afford him an opportunity to clear his name. Id. at 47-48. There, the plaintiff contended that the website implied that he was currently dangerous, and that the implication

constituted a false statement. The Second Circuit agreed, and found that the website implied "that some of the registrants [we]re more likely than the average person to be currently dangerous," and that, "[i]f the 'plus' factors [were] present * * * then the plaintiff [was] entitled to due process in the form of a hearing at which he would have the opportunity to establish that he [was] not particularly likely to be dangerous and therefore should not be listed in a publicly disseminated registry in a way that falsely implies otherwise." Id. at 49.

The Court then turned to a consideration of the "plus" factor, and concluded that "a plaintiff establishes a 'plus' factor for purposes of the Paul v. Davis 'stigma plus' test only if he or she points to an indicium of material government involvement unique to the government's public role that distinguishes his or her claim from a traditional state-law defamation suit." Id. at 56.[6] The

---

[6]Earlier in its opinion, the Court described the threshold requirement, for satisfying the presence of a "plus factor," as follows:

> If the plaintiff can point to some material indicium of government involvement beyond the mere presence of a state defendant to distinguish his or her grievance from the garden-variety defamation claim, courts can be assured that §1983 will not become "a body of general federal tort law" duplicative of "whatever systems may already be administered by the States."

(continued...)

Court further concluded that "the dispositive issue is neither the degree of burden inherent in the proffered 'plus' factor nor the substantiality of the interest, right, or status affected thereby," but "[r]ather, at least when the governmental action is not trivial, the inquiry turns on the character of the action on which the plaintiff seeks to establish the 'plus' component." Id. at 59. Employing this standard for ascertaining the presence of a "plus factor," the Court concluded that the registration requirements of the Connecticut statute were "extensive," and "onerous," and, if not observed, could result in a prosecution for a "class D felony, punishable by up to five years in prison." Id. at 57.

Certiorari has been granted in Doe and, to that extent, its import is unsettled, but one might well question what is left of the Supreme Court's holding, in Paul v. Davis, given the standard employed in Doe.[7] In Davis, two police chiefs circulated "flyers"

---

[6](...continued)
Doe v. Dep't of Public Safety, 271 F.3d 38, 54 (2nd Cir. 2001), cert. granted, --- U.S. ---, 70 U.S.L.W. 3703 (U.S., May 21, 2002), quoting Paul v. Davis, 424 U.S. 693, 701 (1976).

The Court provided no explanation how the application of this standard would lessen the overlap of purely private State law defamation claims, and those seeking relief, under Section 1983, for defamation by State actors.

[7]In granting Certiorari, the question presented was particularized as follows:

(continued...)

to eight hundred local merchants which contained "mug shots," and the names, of persons whom the flyer labeled as "active shoplifters." Included in the flyers was a photograph of the complainant, who had been charged with shoplifting, "but his guilt or innocence of that offense" had not been resolved before the flyer was circulated and, after the flyer's distribution, the charges were dismissed. Paul v. Davis, supra at 694. The complainant commenced a Section 1983 action against the police chiefs, claiming that they had denied him a liberty interest in his reputation by, under color of State law, circulating the flyers which falsely identified him as an active shoplifter. In rejecting the complaint's cause of action, the Court reasoned as follows:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that

---

[7](...continued)

> Did court of appeals erroneously conclude, contrary to other courts of appeals and in manner inconsistent with Paul v. Davis, that Connecticut's sex offender registration law implicates offender's liberty interest by listing offenders in undifferentiated registry and denies due process by failing to afford offender hearing regarding his "current dangerousness" before publishing true and accurate information about him and his conviction history?

they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status. In Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), for example, the State by issuing drivers' licenses recognized in its citizens a right to operate a vehicle on the highways of the State. The Court held that the State could not withdraw this right without giving petitioner due process. In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the State afforded parolees the right to remain at liberty as long as the conditions of their parole were not violated. Before the State could alter the status of a parolee because of alleged violations of these conditions, we held that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards.

In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages

> actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.

Id. at 711-12.

We recognize, as the Court in Doe underscores, that Davis did not involve a registration requirement, or any other affirmative act by the government officials, other than the circulation of the defamatory flyers and, at least on one level of analysis, Davis is distinguishable from Doe on that basis. However, left unstated in Doe is the "right" or "status," that had previously been recognized by State law, which was distinctly "altered or extinguished" by the registration requirement. We are aware of no general right, created under State or Federal law, which prohibits a State from requiring a citizen to register with a State Agency, for one reason or another, when, as we have found here, the registration requirement serves a valid regulatory purpose, and has a rational relationship to that purpose. As we read Doe, it appears that, because the State of Connecticut required the plaintiff to register, the plaintiff was able to point to "an indicium of material governmental involvement unique to the government's public role that distin-

guishes [the] claim from a traditional state-law defamation suit." Doe v. Dep't of Public Safety, supra at 56. While, undoubtedly, the registration requirement imposed additional obligations on the plaintiff, in Doe, if those obligations are equivalent to the loss of the license to drive, or to be released on probation, then Doe would be compatible with Davis. We note, however, that Davis took pains to observe that the plaintiff, there, had the real potential to lose his employability by virtue of the conduct of the State actors.

We need not now predict the ultimate import of Doe, for we find that case to be distinguishable on other grounds. There, the registration requirement was coupled with an availability of the information to the general public -- a circumstance that is not presented here.[8] Since the Court, in Doe, was addressing a regis-

[8]We recognize that public dissemination of the information could occur if the registrant failed to comply with the address registration requirements, see Minnesota Statutes Section 243.166, Subdivision 7a(a), but the "amount and type of information made available shall be limited to the information necessary for the public to assist law enforcement in locating the offender." Id. In addition, a knowing violation of the Statute constitutes a felony, which could result in a sentence of imprisonment for a period of up to five years, a fine of $10,000.00, or both. Minnesota Statutes Section 243.166, Subdivision 5. However, these public disclosures, and potential penalties, would only arise from an intentional violation of State law -- they are not automatic in the sense that, in registering, the registrant disgorges the information to the general public, as was the case with the registration statute in Doe.

tration requirement that was closely connected with public disclosure, we are unable to determine, with any degree of certainty, how the Court's analysis would have been altered if, as here, no automatic public disclosure was involved. See, Doe v. Dep't of Public Safety, supra at 59 ("The information published by the State is obtained by means of the registration requirement, and a person can be stigmatized by publication of the registry only if he or she is first subjected to that requirement."). We note, however, that the injunction in Doe, that was affirmed by the Court of Appeals, was "limited to public disclosure of the sexual offender registry; it d[id] not prevent law enforcement agencies or officers from obtaining access to the registry or using information it contains for purposes of protecting the public or investigating specific crimes." Id. at 46-47. Indeed, the Court went on to further explain that, "because it is the communication to the public of the fact that the plaintiff (and other members of the class) is in the registry, without a hearing as to the current danger that the plaintiff (and other members of the class) poses, that is both central to the constitutional infirmity of the statute and the principal object of the injunction, the injunction is properly tailored to fit the nature and extent of the violation." Id. at 62. The specific basis for the Court's holding, in Doe, that the plaintiffs were entitled to a Due Process Hearing appears to have

arisen from the fact that the plaintiffs were being labeled as "currently dangerous" in a "publicly disseminated registry." Id. No similar concern can legitimately be raised here and, by our reading, it would appear that, if only registration were at issue in Doe, then it would have been unlikely for the Court to have imposed any form of injunctive relief, such as the imposition of a Due Process Hearing requirement.

In applying the holding in Davis here, we find that the Plaintiff has failed to identify any change in his legal status, entitlements, or rights, which the act of registration has denied to him. He has not suggested, let alone shown, that State or Federal employment has been denied to him, that his entitlements under State or Federal law have been diminished by the registration requirement, or that his legal status has been extinguished or altered in any appreciable way. As the Minnesota Supreme Court explained in Boutin v. LaFleur, supra at 718:

> Boutin claims that complying with the requirements of the registration statute amounts to the loss of a recognizable interest. This argument fails because there is no recognizable interest in being free from having to update address information. Such a requirement is a minimal burden and is clearly not the sufficiently important interest the "stigma-plus" test requires. See, [Davis v. Paul, 424 U.S. at 710].

Although he is required to register, which does impose some affirmative duties upon him, we are not presented with any denial of "liberty" or "property" in the Constitutional sense.

Moreover, we have not been presented with any showing that the Plaintiff has been stigmatized, or defamed, in any sense cognizable under State or Federal law. To be sure, a public disclosure of his inclusion in the Registry could have a deprecating impact on the Plaintiff's reputation, but he has not identified any such disclosure, and we are aware of no decision, and the Plaintiff has drawn none to our attention, which invalidates a registration requirement, where the disclosure is made to governmental law enforcement agencies, as we face here. Rather, the decisions we have reviewed have determined, either directly or by clear implication, that such a limited disclosure does not run afoul of Constitutional due process. See, Russell v. Gregoire, 124 F.3d 1079, 1094 (9th Cir. 1997), cert. denied sub nom., Stearns v. Gregoire, 523 U.S. 1007 (1998); Cutshall v. Sundquist, 193 F.3d 466, 478-81 (6th Cir. 1999), cert. denied, 529 U.S. 1053 (2000); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1268-69 (3rd Cir. 1996).

We find one explanation for such an absence of decisional authority in the defamation laws of both the State of Minnesota and the Federal Government. Under Minnesota law, an absolute privilege attends the contents of official police reports, which would be

equivalent to the sharing of law enforcement information in the Registry, and a qualified privilege attends the disclosure of such information to non-law enforcement personnel. Since we have found, as has the Minnesota Supreme Court, that the Statute is rationally based, and serves a legitimate State interest in solving crimes, and since any public disclosure is limited to locating the whereabouts of a noncompliant registrant, we doubt that any viable claim of defamation would arise under the Statute.[9] The same holds true under Federal law. In Barr v. Matteo, 360 U.S. 564 (1959), the Supreme Court confronted a press release, issued by a Federal executive employee, which was critical of the plaintiff, who sued the executive for libel. The Court rejected the claim as the press release was within the scope of the executive's duties, and the executive could not, therefore, be held liable as the communication was absolutely privileged. In explaining the purpose of the privilege, the Court quoted the following expression of Judge Learned Hand:

> It does indeed go without saying that an official, who is in fact guilty of using his

---

[9]We have found, as the Minnesota Supreme Court has found before us, that the Statute serves a proper purpose in assuring that law enforcement has the current addresses of those who are required to register. By logical extension, the limited public disclosure requirement serves that same purpose, in order to secure the address of those who refuse to comply with the Statute's demand for a current address.

> powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tired, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been though in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Id. at 571, quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir. 1949).

Given these authorities, we have no reason to believe that the Plaintiff can secure relief, here, under the rubric of Section 1983, when public policies of the most critical sort would deny him relief under the rule of privileged communications. As a consequence, we find that the Plaintiff has failed to satisfy the

"stigma-plus" standard of Davis, and that Summary Judgment should be granted to the Defendant on the Plaintiff's denial of due process claim.

Lastly, we conclude that the Plaintiff received the process to which he was due. Procedural Due Process has flexible requirements, and the type of procedural protection that would be required varies according to the particular situation at hand. See, Morrisey v. Brewer, 408 U.S. 471, 481 (1972). In general, however, the fundamental requirements of the Due Process Clause are notice, and an opportunity to be heard at a meaningful time, in a meaningful way. See, Armstrong v. Manzo, 380 U.S. 545, 552 (1965). To determine what process was due, Courts should "balance three factors: first, 'the private interest that will be affected by the official action;' second, 'the Government's interest;' and third, 'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.'" Wallin v. Minnesota Dep't of Corrections, 153 F.3d 681, 690 (8th Cir. 1998), citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

The Plaintiff contends that he has "an enormous interest in not being mislabeled as a sex offender," and a similar interest in not being made to comply with the registration requirements of the Statute. Plaintiff's Brief at 13. He argues that there is a great

risk of erroneous deprivation of his reputational interest, in not being mislabeled as a sex offender, because the only consideration that was used in labeling him as such, was the predatory offense charge, and not the fact that he did not actually commit that offense. In addition, he argues that the Government has no interest in registering non-predatory offenders on the Registry, and therefore, has a minimal interest in having him register, at least in the absence of some affirmative proof that he is, indeed, a predatory offender. Accordingly, the Plaintiff urges that he was entitled to due process, and yet received none.

Countering, the Defendant contends that the Plaintiff's arguments are misplaced. While the Defendant recognizes that the Plaintiff has a private interest that could be affected by the registration process, the Defendant disagrees with the Plaintiff's assertion of a risk that he will be erroneously deprived of that interest. Rather, the Defendant maintains that the Plaintiff has improperly focused on the risk of requiring a person, who did not commit an enumerated predatory offense, to register, while, more properly, he should have focused on the risk that a person who did not meet the Statute's express requirements was made to register. We concur with the Defendants' view.

While the Plaintiff plainly disagrees with the Minnesota Legislature's decision to require persons, who were charged with an

enumerated offense and who were convicted of a non-enumerated offense arising out of the same set of circumstances, to register, we find no constitutional shortcoming in the decision the Legislature made, as we have detailed in our analysis of the Plaintiff's substantive due process claim. We recognize that, to the uninitiated, some risk is presented that inclusion on the Registry will be interpreted as a finding that a registrant is a predatory offender, when he or she is not, but we agree with the Minnesota Supreme Court, that any such misinterpretation will be inconsequential, as those employing the Registry will be law enforcement officers. See, Boutin v. LaFleur, supra at 715 n. 3 ("We are satisfied that law enforcement will not be misled by the caption to the registration form.").

We reject, as unsound, the Plaintiff's assertion that he received no process whatsoever. In truth, even had the Plaintiff been entitled to the most significant due process protections, we find that the process he was provided was sufficient. There can be no question but that the Plaintiff was advised of the registration process, for he has averred that "it was his understanding that [his] attorney had discussed [the repercussions concerning the dismissed sexual assault charge] and that [he] would not have to register as a predatory or sex offender." Affidavit of Brian Gunderson at p. 2, para. 6. Although the Plaintiff, and his

attorney, may have been under some misapprehension as to the applicability of the Statute under his circumstances, the existence of the Statute was certainly no surprise to him. Indeed, if either the Plaintiff, or his attorney, had read the Statute, they would have been advised that "[t]he court may not modify the person's duty to register under [Section 243.166] in the announced sentence or disposition order." Minnesota Statutes Section 243.166, Subdivision 2.

Beyond notice, the Plaintiff was afforded the opportunity to be heard on the allegations which supported both the predatory offense charge, and the non-predatory offense charge, which gave rise to his obligation to register. The Plaintiff employed that opportunity by pleading guilty to the non-predatory offense. As a consequence, the Plaintiff received both "predeprivation" notice and a full opportunity to be heard. The Plaintiff may not believe that he should be required to register, but the registration requirement is applicable to all persons who are convicted of an offense that arises out of the same set of circumstances as prompted the person's being charged with a predatory offense. If the Plaintiff had elected to challenge the charge of the non-predatory offense, it was within his power to do so, but he did not.[10]

---

[10]Given the construction of the Statute by the Minnesota Su-
(continued...)

In sum, we find no constitutional violation, nor any other legally viable claim, in the Plaintiff's Complaint, and, finding no genuine issue of material fact, we recommend that the Defendants' Motion for Summary Judgment be granted, as the Defendants are entitled to Judgment as a matter of law.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Plaintiff's Motion for Summary Judgment [Docket No. 18] be DENIED.

2. That the Defendants's Motion for Summary Judgment [Docket No. 14] be GRANTED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to

---

[10](...continued)
preme Court, which we have adopted, we see no benefit to the conduct of a post-deprivation Due Process Hearing, as the Statute plainly reveals that a person cannot be required to register, under the Statute, unless he or she has been convicted of a qualifying offense. Here the Plaintiff was so convicted, by virtue of his entry of a guilty plea, which would only be duplicated by a post-deprivation Hearing.

this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 27, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 27, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.